**UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 11-01164-DD |
| Leroy C. Tincher, | Chapter 7 |
| Debtor. | **ORDER** |

This matter is before the Court on two Reaffirmation Agreements between Leroy C. Tincher ("Debtor") and two of his creditors. A Reaffirmation Agreement between Debtor and Wells Fargo Financial South Carolina, Inc. ("Wells Fargo") was filed on May 23, 2011, and a Reaffirmation Agreement between Debtor and PNC Mortgage ("PNC") was filed June 6, 2011. Hearings were held on both Reaffirmation Agreements on June 27, 2011. Following the hearings, the Court took the matters under advisement for further consideration. The Court now makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

Debtor filed for chapter 7 relief on February 24, 2011. Debtor's Schedule I reflects monthly net income of $1,522.00 per month from retirement income and Social Security. Debtor has monthly Schedule J expenses of $1,593.00, leaving Debtor with a deficiency of $71.00 per month. Debtor's Schedule D shows two secured debts: a mortgage on a mobile home and land and a lien on a 2006 Pontiac G6. Debtor's Schedule F estimates unsecured debt of $42,323.92, which appears to be comprised nearly exclusively of credit card debt.

Debtor's Reaffirmation Agreement with Wells Fargo was filed on May 23, 2011. Wells Fargo's debt is secured by a lien on Debtor's automobile, a 2006 Pontiac G6. The agreement requires Debtor to repay a total of $9,200 in 31 monthly installments of $330.00. The annual percentage rate of interest under the terms of the Reaffirmation Agreement is 8 percent, while the

contractual interest rate was 13.24 percent. The Reaffirmation Agreement indicates the terms of the agreement have reduced Debtor's monthly payment by $55.00 per month, decreasing Debtor's monthly shortfall to $16.00. Debtor indicated at the hearing that he is current on payments to Wells Fargo.

Debtor's Reaffirmation Agreement with PNC was filed June 6, 2011. The agreement relates to Debtor's primary residence, which is a mobile home and the land on which it sits in Gaston, South Carolina. Under the agreement, Debtor is required to pay PNC a total of $62,241.14. Debtor's Schedule A lists the value of his residence at $51,790.00. Debtor's monthly payments are $567.72, which Debtor must make for 258 months. The fixed interest rate under the agreement is the same as the contractual interest rate of 8.5 percent. Debtor stated at the hearing on the Reaffirmation Agreement that he had applied for the Home Affordable Modification Program ("HAMP") and was advised that his modification could not be processed until he received his chapter 7 discharge. PNC, according to Debtor, required him to sign the Reaffirmation Agreement in order to proceed with HAMP after the conclusion of his bankruptcy. Debtor testified that he is current on his mortgage payments.

## CONCLUSIONS OF LAW

**I. Reaffirmation Agreement with Wells Fargo**

11 U.S.C. § 524(c) allows a debtor to reaffirm a debt in a chapter 7 case and sets forth numerous requirements for doing so. If a debtor chooses to reaffirm a debt, and the reaffirmation agreement meets all requirements set forth in section 524(c), the debtor will remain personally liable for a debt on which his personal liability would otherwise have been discharged in his chapter 7 case. *See In re Watson*, No. 10-04254-dd, 2010 WL 5169078, at *1 (Bankr. D.S.C. Aug. 10, 2010). The Court will set a hearing on a reaffirmation agreement when a presumption

of undue hardship exists. Testimony of a debtor and changes to a loan agreement can often rebut the presumption.

Debtor has chosen to reaffirm a debt on his vehicle, a 2006 Pontiac G6. Under the Reaffirmation Agreement, Wells Fargo has agreed to reduce Debtor's interest rate from the contractual rate of 13.24 percent to 8 percent and has reduced Debtor's monthly payments from $385.84 to $330.00 per month. This reduction in monthly payments reduces Debtor's monthly deficit to only $17.00 per month. Debtor testified that he could make up this difference by reducing Schedule J expenses like food and transportation. Based on the facts that the Reaffirmation Agreement provides Debtor with more favorable terms for repaying his debt with Wells Fargo, that Debtor's monthly deficit is reduced by the Reaffirmation Agreement and is insignificant enough that Debtor can reduce monthly expenses to meet his monthly obligations, and that Debtor is current on his payments to Wells Fargo, the Court finds that the Reaffirmation Agreement complies with the requirements of section 524(c) and is in Debtor's best interest. As a result, the Reaffirmation Agreement with Wells Fargo is approved.

**II. Reaffirmation Agreement with PNC**

Ordinarily, the Court scrutinizes reaffirmation agreements concerning real property closely. The agreement must be in the debtor's best interest and should not impose an undue hardship on the debtor. After considering Debtor's Reaffirmation Agreement with PNC, the Court declines to approve the agreement.

Debtor testified at the hearing that he is current on his mortgage, but wished to take advantage of HAMP in order to reduce his monthly payments. This Court has previously ruled that chapter 7 debtors current on real property debts have a "ride-through" option in addition to their options of surrender, reaffirmation, and redemption. *In re Watson*, No. 10-04254-dd, 2010

WL 5169078, at *1, *2 (Bankr. D.S.C. Aug. 10, 2010); *In re Waller*, 394 B.R. 111, 113 (Bankr. D.S.C. 2008); *In re Wilson*, 372 B.R. 816, 820 (Bankr. D.S.C. 2007). This option allows a debtor to continue regular payments and retain possession of the property. *Watson*, 2010 WL 5169078, at *1. This Court denied approval of reaffirmation agreements in *Watson* and *Waller*, finding that because the debtors could retain their real property without entering into the reaffirmation agreements, the agreements were not in the debtors' best interest. *Watson*, 2010 WL 5169078, at *2; *Waller*, 394 B.R. at 114. Here, Debtor is current on his mortgage payments to PNC and as a result, the reaffirmation agreement would not ordinarily be in Debtor's best interest. Because the ride-through option is available to Debtor, approval of the Reaffirmation Agreement with PNC should be denied.

The Court recognizes that the ride-through option may be undesirable to Debtor, as he wishes to use HAMP to reduce his monthly mortgage obligation. Denial of the reaffirmation agreement will not prevent him from doing so. Debtor stated at the hearing on the Reaffirmation Agreement that PNC informed him he was required to sign a reaffirmation agreement in order to take advantage of HAMP after his bankruptcy. Another bankruptcy court considered a similar circumstance in which a creditor required a debtor to enter into a reaffirmation agreement in order to be considered for a loan modification. In that case, the court stated:

> The debtor . . . stated that [the creditor] would not entertain a loan modification until he had reaffirmed the debt. If accurate, the requirement is improper. There is no assurance – or even indication – that a loan modification consistent with the debtor's financial circumstances will be forthcoming. The court will not approve reaffirmation agreements when the approval of the reaffirmation agreement is a condition precedent to a mortgage company entertaining a loan modification. The court may approve reaffirmation agreements for mortgages when there is a loan modification, but only as a part of the loan modification process. After the parties have come to an agreement on the loan modification, the modified loan may be approved by the court through a reaffirmation agreement. When the terms as modified and are within the debtor's budget, the concessions given by the lender are

> valuable consideration and may justify reaffirming a debt that may not otherwise be required to be reaffirmed.

*In re Pope*, No. 10-19688-RGM, 2011 WL 671972, at *1 (Bankr. E.D. Va. Feb. 17, 2011). This Court agrees with the Virginia court. PNC cannot require Debtor to agree to reaffirm its debt in order to consider Debtor for a loan modification after his bankruptcy. Debtor testified that PNC threw away the paperwork he completed and submitted to apply for HAMP because it claimed it could not consider his application until after he received his discharge. This means that there has not yet been a determination whether Debtor is eligible for HAMP or whether Debtor's loan modification will be approved. Even if Debtor is later determined to be ineligible for HAMP, or if PNC decides not to otherwise proceed with a loan modification, Debtor will still remain personally liable for PNC's debt if Debtor's Reaffirmation Agreement is approved. Without assurance that Debtor will be allowed to take advantage of a modification through HAMP, the Reaffirmation Agreement is not part of Debtor's loan modification process and must be denied.

Further support for the Court's conclusion lies in a document issued by the Treasury Department in connection with HAMP, which states:

> Borrowers who have received a Chapter 7 bankruptcy discharge in a case involving the first lien mortgage who did not reaffirm the mortgage debt under applicable law are eligible for HAMP. The following language must be inserted in Section 1 of the Home Affordable Modification Agreement: "I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents. Based on this representation, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement."

Supplemental Directive 10-02, Home Affordable Modification Program-Borrower Outreach and Communication, at 8, *available at*

https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/sd1002.pdf (March 24, 2010). This directive makes clear that debtors who file bankruptcy were intended to be eligible for HAMP post-bankruptcy, without being required to reaffirm their mortgage debt. Debtor does

not have to sign a reaffirmation agreement with PNC to be eligible for a HAMP modification after his bankruptcy, and PNC cannot force him to do so.  Debtor can attempt to take advantage of HAMP post-bankruptcy, without signing a reaffirmation agreement during his chapter 7 case.  Based on the various other options available to Debtor, as well as the fact that his expenses exceed his income, the reaffirmation agreement is not in Debtor's best interest and cannot be approved.

## CONCLUSION

For the reasons set forth above, Debtor's Reaffirmation Agreement with Wells Fargo is approved.  Debtor's Reaffirmation Agreement with PNC is not in Debtor's best interest and therefore, approval of that Reaffirmation Agreement is denied.  Debtor may pursue modification through HAMP following his chapter 7 discharge.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**07/05/2011**



David R. Duncan
US Bankruptcy Judge
District of South Carolina

Entered: 07/06/2011